ERNESTO COLÓN APONTE, Appellant, *v.* REGISTRAR OF PROPERTY OF BAYAMÓN, Respondent.

No. 1196.   Argued November 4, 1946.—Decided March 6, 1947.

*Diego O. Marrero* for appellant.   The registrar appeared by brief.

ON RECONSIDERATION

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

On July 1, 1946, deed No. 3 of January 30, 1946, executed before Notary Diego O. Marrero was presented in the Registry of Property of Bayamón. This document contained the protocolization of the joint will executed in Saint Thomas on April 30, 1942, by Frans Alfred Hammer and his wife Edith Pauline Hammer. It was accompanied by deed No. 11, executed in San Juan on April 8, 1946, before said notary. In the latter deed, Mrs. Hammer, the co-testator, adjudicated to herself by virtue of said will a rural property situated within the Municipality of Bayamón, recorded in favor of the conjugal partnership constituted by her and her husband. Those instruments were accompanied by the corresponding complementary documents. On the same day, record was sought of deed No. 16, executed on May 16, 1946,

before Notary Marrero, wherein Holder Rhode Fog, as attorney in fact of Mrs. Hammer, sold the aforesaid property to Ernesto Colón Aponte.

The registrar refused to record the will on six grounds which he set forth in his decision of July 22, 1946, and as a consequence of his refusal, on September 12, 1946, the deed of sale in favor of appellant was withdrawn without any entry having been made.

No appeal was taken from the registrar's refusal; but on September 16, 1946, the deed of protocolization of the will together with the complementary documents, as well as the aforesaid deed of sale, was presented for recordation. As to the will, the registrar returned it without making any entry, on the ground that record thereof had been denied in his decision of July 22, 1946, which decision, he believed had been consented to.

As to the deed of sale in favor of the appellant, he recorded it as to the one-half undivided interest which the vendor, Edith Pauline Hammer, had in the conjugal partnership but denied it as to the other one-half because it had not been recorded in favor of the conveyer, since record of the will had been denied as we already pointed out.

The present appeal has been taken from the refusal to record the will and from the registrar's note of September 16, 1946, wherein he denied record of the deed of sale as to the undivided one-half interest in the property because it had not been recorded in favor of the vendor.

I

In his brief, the registrar urged in the first place, that this administrative appeal should be dismissed because, since his decision of July 22, 1946, refusing to record the will had been consented to, the will could not be presented again for recordation.

Since the registrar maintained that both times the deed of protocolization of the will was presented, as well as the

second time that the deed of sale was presented, the documents were presented by the same person and appellant's attorney admitted that the first note denying the record of the will had been consented to because he was not in Puerto Rico and did not have an opportunity to appeal therefrom, we agree with the registrar that, since appellant had consented to the note, he could not again present the deed of the will for recordation. Consequently, we dismissed the appeal by an order of January 13, 1947. But appellant sought a reconsideration thereof and, upon examining the entries in the registry by virtue of certificates which we ordered the registrar to send up, we found that Attorney Diego O. Marrero on both occasions sought recordation of the deed of protocolization of the will. However, there is no showing that in both cases he acted as agent with verbal authority for the same person. If, upon presenting the deed of protocolization of the will for the first time, Attorney Marrero really did so as the agent of Edith Pauline Hammer and the second time as agent of petitioner herein, we do not agree that petitioner is bound by the decision consented to by Edith Pauline Hammer, as the former irrespective of the latter, was entitled to record the will in order to be able to record the conveyance to him. *Colonial Co.* v. *Registrar,* 1 *S.P.R.* 396, 401; *Jiménez* v. *Registrar,* 62 P.R.R. 335.

In view of our doubts as to whether appellant consented to the first decision denying record of the will, we must set aside our order of January 13, 1947, whereby we dismissed the appeal and consider it now on its merits.

## II

■ We will discuss jointly the first two grounds of the registrar's refusal:

1. The first ground alleged for denying registration of the deed of protocolization of the will, is that the will involved was jointly executed by husband and wife and that such a will is prohibited by § 618 of the Civil Code.

2. The second consists in that the forms and solemnities required by law for the wills executed in the Virgin Islands have not been proved; but assuming that it was shown that such forms and solemnities have been complied with, this could not make the will valid inasmuch as, pursuant to § 11 of the Civil Code, prohibitory laws relating to persons, their acts or their property, and those which relate to public order and to good morals shall not be affected by laws, decisions, regulations or agreements in force in any foreign country.

Appellant contends that the prohibition of § 618 of the Civil Code [1] contemplates a joint will executed in Puerto Rico and the one prohibited by § 667 [2] is a joint will executed by citizens of Puerto Rico outside of the Island even though it is valid under the laws of the State where it is executed. Based on this assumption, appellant concludes that, since the will in question was executed by persons who are not citizens of Puerto Rico, in a country where that kind of will is valid, the prohibitions contained in §§ 618 and 667 are not applicable, and, consequently, the registrar erred in regarding it as void. He further argues that the last paragraph of § 11 of the Civil Code is not applicable, because the joint will is neither contrary to public order nor to good morals.

Section 618 does not contain the limitation that appellant seeks to insert, to the effect that a joint will is prohibited only when it is executed in Puerto Rico. What this Section provides is that a joint will is not valid in this Island. Commenting on § 669 of the Spanish Civil Code, from which our § 618 was literally copied, Manresa sets forth the main reasons of public policy which urged the Spanish lawmakers to pro-

---

[1] Section 618 of the Civil Code prescribes:

"Two or more persons can not make a will conjointly or in the same instrument, either for their reciprocal benefit or for the benefit of a third person."

[2] Section 667 of the Civil Code prescribes:

"A mutual will prohibited by section 618 which the citizens of Porto Rico execute in the United States or in a foreign country, shall not be valid in Porto Rico, even though the laws of The State or of the Nation where it had been executed authorize it."

hibit [3] the joint will except in those provinces where the local law prevails and authorizes them.[4]    Said author states:

"These wills, an irregular combination of testamentary and contractual dispositions, as once described by an eminent professor on a solemn occasion, are incompatible with the principle of revocability essential to the law of testate succession, and they afford but scarce advantages in comparison to the many inconveniencies which they caused by the possible confusion of the patrimonies, by lack of spontaneity in one of the contracting parties, and by the risk of easy suggestions and even of actual enticement, especially in those wills executed by husband and wife where there often is a victim of seduction and deceit.

"Such procedure being unscientific, learned notaries were prompt to refuse the execution of such wills because of their experience that the stronger spouse imposes his or her will or caprice on the weaker one of the contracting parties thus lacking the necessary freedom to dispose of his or her property because of the influence exerted upon him or her by the other spouse.

"Such outrages and the repeated objections thereto could not be unnoticed by the Code Commission which taking them into consideration, repealed this kind of wills.    But Rule 2 of the Code's transitory provisions left in force such wills as were executed under the former law with the limitations which we shall hereinafter set forth; and, therefore, it is important to know the provisions of the old law, for, in practice as well as in the courts' every day work, the validity of a joint will may be challenged." Manresa, *Comentarios al Código Civil*, (2d ed. 1905), vol. 5, pp. 420–1.

It is obvious that a joint will executed by a citizen of Puerto Rico in a country permitting it, intended to be effective in said country, does not give rise to any problem of private international law, and therefore, the laws of Puerto

---

[3] The joint will is purely of Spanish origin. It took root in Spain in the Fuero Real, Law 9, Tit. VI, Book III. Its authorization was limited at that time to husband and wife who after one year of marriage had not had issue or had no relative entitled to inherit them; but if they later had children from their marriage the will was revoked. Law 33 of the Partidas prohibited it except in cases of military men, during a battle or about to engage in one. Law 33, Tit. XI, Partida 5th. Notwithstanding this prohibition, its usage authorized it, for which reason, upon enacting the Civil Code, it had to be prohibited again. 12 Scaevola, Civil Code, p. 186.

[4] Sections 12 and 13 of the Spanish Civil Code.

Rico which naturally cannot have any extraterritorial effect are inapposite. But the will under consideration disposes of real property situated in Puerto Rico, and that fact accounts for the application of § 11 of the Civil Code, the first and third paragraphs of which read thus:

"The forms and solemnities of contracts, wills and other public instruments are governed by the laws of the country in which they are executed.[5]

"* * * * * * *

"Notwithstanding the provisions of this and the preceding section, prohibitory laws relating to persons, their acts of property, and those which relate to public order and to good morals shall not be held invalid by reasons of laws, decisions, regulations or agreements in force in any foreign country."

If the third paragraph of § 11 and § 666 of the Civil Code[5a] did not exist, the construction placed by appellant on §667 would be plausible; but we have already seen that the joint will has been prohibited because it is regarded as contrary to public policy. This being so, the prohibition contained in § 618 is not inoperative because the will in question was executed by persons who are not citizens of Puerto Rico in a country where that will is valid. To this effect De Buen says:

"Since in the application of foreign laws there should always prevail the limitation established by Section 11, to the effect that prohibitory laws relating to persons, their acts or properties and those which relate to public order and good morals shall always be respected, we believe that nobody in Spain shall invoke his personal statute in order to perform an act in contravention of those principles." 1 De Buen, *Derecho Civil Español Común*, (2d. ed. 1930), p. 104.

---

[5] It seems pertinent to add that some text writers believe that the defect of the joint will is not one of mere form but that it is one of substance, that is, it affects the intrinsic validity of the will. 5 Manresa, *Comentarios al Código Civil Español* (2d. ed. 1905), p. 693; Wolff, Private International Law, p. 604; 3 Bonel and Sánchez, *Comentarios al Código Civil Español*, bk. 3, p. 305.

[5a] Section 666 of the Civil Code, in its pertinent part, provides:

"Citizens of Porto Rico may make wills abroad, according to the forms established by the laws of the country in which they are sojourning."

It might be argued *a contrario sensu* with a ring of truth that under § 667 of the Civil Code, when a joint will is executed, as in the present case, by persons who are not citizens of Puerto Rico, in a country where such will is valid, it will be regarded as valid in this country. The answer is that § 667 is but an exception to § 666,[6] a necessary exception in order that the latter should not be construed in the sense that pursuant to § 666, citizens of Puerto Rico may thwart the prohibition contained in § 618 by executing, in countries where it is valid, a joint will which, in whole or in part, is to be carried out in Puerto Rico.

Commenting on § 733 of the Spanish Civil Code, equivalent to our § 667, Manresa says:

". . . As we have already stated in the introduction to this section, in order that the documents, and therefore, the wills executed in foreign countries be valid in Spain, *the act or contract subject matter of said documents, must,* among other requirements, be *legal and authorized by the Spanish laws.* It was so prescribed by the Royal Decree of October 17, 1851; it was so ordered in general for all kinds of documents by Section 600 of the Law of Civil Procedure [599 of the Law of Civil Procedure for the Islands of Cuba and Puerto Rico]; and this is the theory generally admitted. In virtue thereof, the joint will not being legal or authorized in Spain, under Section 669 of the Code, a will thus executed in a foreign country would lack the primary requirements already pointed out and could have no legal effect in our country. (Italics of the author.)

"This is exactly what the Section we are discussing provides *which does not annul the aforesaid will executed in a foreign country but confines itself to declare it void in Spain only.* Outside of Spain it may be either valid or void according to the prevailing legislation, but in Spain such testamentary dispositions could not become enforced, executed or carried out. (Italics ours.) Manresa, *Comentarios al Código Civil Español,* (2d ed. 1905), vol. 5, p. 695.

Appellant invokes the decision of the General Directorate of Registries of October 28, 1894. But his theory is not supported by this decision. The decision involved a joint will

---

[6] Sánchez Román, Derecho Civil, (2d ed. 1910), vol. I, p. 528.

executed in Aragón by residents of that province to have effect within its territory.[7]  But since this will is valid under the local legislation of Aragón, there arose no conflict of laws and the situation was the same as if a joint will would have been executed in a country where it was valid by citizens of said country to have effect within its territory.

Since this will is not valid in Puerto Rico even though it was executed under the condition already stated, that is, in a country where it was valid and by persons who are not citizens of Puerto Rico, this document can not convey any rights which the testator held over his property situated in Puerto Rico.

The nature of the defect of the document in question excuses us from considering the other grounds of the decision appealed from.  The registrar did not err in denying the recordation and, consequently, he did not err either in recording the deed of sale only as to the one-half interest in the property which appeared recorded in favor of Edith Pauline Hammer.

The decision appealed from should be affirmed.

Mr. Justice Snyder concurs in this result.

---

[7] It seems pertinent to quote the following paragraph of the decision of October 28, 1894:

"Considering that in view of such categorical Sections it is not lawful to regard any provision of the *derecho foral* * as repealed by the Civil Code, even in the case of *such a sweeping provision as that contained in Section 669;*

"Considering that in disposing of this appeal, we cannot take into account Section 10 invoked by the registrar simply because the purpose of this Section is to fix the extraterritorial validity of laws whether the conflict arises between the Spanish and the foreign laws or whether it arises between the Civil Code and the *derecho foral,* and *the question for decision does not involve the validity of an Act of Aragón outside the territory of that province,* but the effectiveness of a certain *observancia* in conflict with a provision of the Code, for which reason the only Sections to be considered and applied are the aforesaid Sections 12 and 13; . . . "  (Italics ours.)  Decrees referring to the Registry, of Property (Years 1892–1895), pp. 586, 588.

* *Derecho foral* means the systems of law prevailing in certain provinces of Spain, independently of the Civil Code.